IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN S. WARWICK *doing business as* WARWICK DENTISTRY and JOYCE K. WARWICK, *doing business as* WARWICK DENTISTRY,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>ASPEN AMERICAN INSURANCE COMPANY,<br><br>     *Defendant*. | Civil Action No. 2:21-cv-250<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiffs John S. Warwick and Joyce K. Warwick, d/b/a/ Warwick Dentistry ("Warwick") brought this declaratory judgment action seeking insurance coverage for business losses resulting from state-imposed COVID-19 mitigation measures. Defendant Aspen American Insurance Company ("Aspen") has denied coverage, contending that the interruptions to Warwick's business did not trigger coverage under Warwick's policy. (ECF No. 17, p. 2). The Court holds that Aspen is correct and coverage is not warranted under the plain language of the insurance policy. Aspen's Motion to Dismiss Warwick's First Amended Complaint (ECF No. 21) will be granted.

  **I.**  **BACKGROUND**

  In considering a motion to dismiss, the Court is limited to the facts pleaded in the Amended Complaint and any attachments thereto and must view those facts in a light most favorable to the plaintiff. Here, Warwick's Amended Complaint contains largely boilerplate language about the COVID-19 pandemic, the nature of the virus itself, and the response of various governments,

1

including the government of the Commonwealth of Pennsylvania, to the pandemic. The Amended Complaint's allegations specifically relating to Warwick and its alleged losses are skeletal at best. Nevertheless, the Court can discern the following: Warwick is a dentistry business located in Pittsburgh, Pennsylvania. It was forced to suspend or limit operations (for an unspecified amount of time) by the mandates issued by Governor Tom Wolf. It had an insurance policy, D017182-23 (the "Policy") with Aspen that included, *inter alia*, coverage for lost business income stemming from physical loss or damage to its property and Civil Authority coverage. Warwick made a claim for loss pursuant to the Policy. Aspen "rejected Plaintiff's claim for coverage for business income loss and extra expense, civil authority and other claims, contending, *inter alia*, that there was no physical loss or damage to Plaintiff's Insured Property or surrounding property." (ECF No. 17, ¶ 8). Warwick then brought this action seeking a declaration that coverage is owed under the Policy. The Amended Complaint pleads no specific facts about the duration and extent of its closure or the amount of its losses. Rather, it alleges in a conclusory and formulaic manner that Warwick has suffered the type of physical loss or damage that would trigger coverage under the Policy.

## II.   STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege enough facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Mercy Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although the Court must accept the allegations as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal

conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the Court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.   ANALYSIS

#### A.   Principles of Pennsylvania insurance contracts

Courts generally enforce the plain language of an insurance policy. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 901 (3d Cir. 1997) ("If . . . the terms of the policy are clear and unambiguous, the general rule in Pennsylvania is to give effect to the plain language of the agreement." (citations omitted)). Policy exclusions, similarly, are enforced under their plain meaning. *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760–61 (3d Cir. 1985) ("Exclusions from coverage contained in an insurance policy will be effective against an insured if they are clearly worded and conspicuously displayed . . . ."). Any ambiguity in policy language should be interpreted against the insurer. *McMillan v. State Mut. Life Ins. Co.*, 922 F.2d 1073, 1075 (3d Cir. 1990).

When parties dispute coverage and exclusions under an insurance policy, courts will apply a burden-shifting framework. *See Burgunder v. United Specialty Ins. Co.*, No. CV 17-1295, 2018 WL 2184479, at *4 (W.D. Pa. May 11, 2018). "[I]n an action based upon an 'all risks' insurance policy, the burden is upon the insured to show that a loss has occurred; thereafter, the burden is on the insurer to defend by showing that the loss falls within a specific policy exclusion." *Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1256 (Pa. Super. 2008). As explained below, the Court's analysis in this case must end at the first stage because Warwick cannot establish its burden that a covered loss occurred.

**B.      No covered loss occurred which would trigger coverage under the Policy**

Warwick asserts that "[t]he Policy provides three primary sources of coverage relevant to this litigation: (1) business income loss coverage, (2) extra expense coverage, and (3) civil authority coverage." (ECF No. 24, p. 7). The Court finds that no cognizable loss claim has been pleaded for coverage under any of these provisions of the Policy.

**1. Business Income Loss Coverage**

As to business income loss coverage, the "Blanket dental practice personal property" provision of the Policy states:

> We will pay for the actual loss of **practice income you** sustain, or the Valued Daily Limit, as described under Limits of Insurance provision III.E.6., due to the necessary suspension of **your** practice during the **period of restoration**. The suspension must be caused by direct physical **damage** to the **building** or **blanket dental practice personal property** at the described premises caused by or resulting from a **covered cause of loss** or power failure as described under Paragraph I.B.8.

(ECF No. 17-1, p. 31) (emphasis in original). The Policy defines "practice income" as "net income, meaning net profit or loss before income taxes, that would have been earned or incurred; and continuing normal operating expenses, including payroll." *Id.* at 48. "Period of restoration" is defined as "the period of time that: (A) begins 24 hours immediately following direct physical

4

damage or power failure as described under Paragraph I.B.8. caused by or resulting from any covered loss at the described premises or power failure as described in Paragraph I.B.8.; and (B) ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." *Id.* A "covered cause of loss," in relevant part, "means ALL RISK OF DIRECT PHYSICAL LOSS excepted as excluded or limited in Section II. of this Coverage Part." *Id.* at 46. Critically, "Damage" is defined as "partial or total loss to your covered property." *Id.* at 47.

The critical triggering event for coverage under the relevant terms of the Policy is "direct physical damage to the building or blanket dental practice personal property." This is where Warwick's claim fails. It does not allege any damage to "blanket dental practice personal property," and it cannot prevail on its argument that there was "direct physical damage to the building," particularly where the Policy defines "damage" as a "partial or total loss to your covered property." Warwick does not allege, nor can it, that whatever COVID-19 interruptions it suffered were caused by "direct physical loss" or "direct physical damage to the building." As the Court has previously held, direct physical loss or damage was not satisfied by the actions of public officials in responding to the virus that causes COVID-19. *See 1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, 513 F. Supp. 3d 623 (W.D. Pa. 2021). Nor is it triggered, as Warwick argues here, by the ubiquity of the virus and the "statistical certainty" that the virus was "in or near Plaintiff's insured property." (ECF No. 24, p. 19).

Warwick's argument that the ubiquitous presence of the COVID-19 virus and the mitigation orders can be construed as "physical loss" or "physical damage" to its building is undermined because the Amended Complaint does not specifically allege that Warwick's access to its facility was foreclosed. Indeed, Paragraph 85 states:

> In light of the Plaintiff's inability to safely use or operate its Insured Property due to the COVID-19 Pandemic, as well as state and local civil authority Orders requiring all non-life-sustaining businesses to cease operations and close all physical locations due to physical loss and damage caused by the COVID-19 Pandemic, Plaintiff was forced to suspend operations of its business.

(ECF No. 17, ¶ 85). But, another Paragraph somewhat inconsistently alleges that "Plaintiff was required to physically alter the Insured Property and drastically reduce operations, and even forced to close entirely, to comply with the Civil Authority Orders and ensure the safety of employees and customers." *Id.* ¶ 92. The boiler-plate language of the Amended Complaint—which is unclear as to whether the "Plaintiff" was completely barred from operations or was able to operate in some capacity—is clarified in Warwick's Memorandum of Law in Opposition to Defendant's Motion to Dismiss which states that "Plaintiff's dental practice was required to suspend operations *except for emergency visits*." (ECF No. 24, p. 6). The fact that Warwick was still able to access its facility, albeit only to serve patients with dental emergencies, highlights that its business losses were not caused by "direct physical loss" or "direct physical damage to the building."

The Court's interpretation of the terms "direct physical loss" and "direct physical damage to the building" gives full effect to the plain language of the specific Policy in this case. Indeed, for the Court to accept Warwick's interpretation, it would have to radically depart from the plain language to craft a far broader interpretation of the relevant terms relating to "physical loss" and "physical damage" than is supported by their ordinary usage or their usages as applied in similar insurance coverage cases. The Court's determination is consistent with its own recent decision in *1 S.A.N.T.* and a growing number of other courts addressing similar claims. 513 F. Supp. 3d 623 (W.D. Pa. 2021); *see also, e.g., Windber Hosp. v. Travelers Prop. Cas. Co. of Am.,* No. 20-cv-80, 2021 WL 1061849 (W.D. Pa. 2021); *ATCM Optical, Inc. v. Twin City Fire Ins. Co.,* 513 F. Supp. 3d 513 (E.D. Pa. 2021); *Whiskey Flats Inc. v. Axis Ins. Co.,* 519 F. Supp. 3d 231 (E.D. Pa. 2021);

*Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, Civ. A. No. 20-cv-3198, 2020 WL 6545893 (E.D. Pa. 2020); *Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, 517 F. Supp. 3d 315 (M.D. Pa. 2021); *44 Hummelstown Assoc., LLC v. Am. Select Ins. Co.*, No. 20-cv-02319, 2021 WL 2312778 (M.D. Pa. 2021).[1] Absent direct physical loss or damage to Warwick's facilities, there is no triggering event for business income loss coverage under the Policy.

### 2. Extra Expense Coverage

The "Extra Expense" provision of the Policy states:

> Extra expense means the extra expenses necessarily incurred by **you** during the **period of restoration** to continue normal business operations which are interrupted due to **damage** by a **covered cause of loss** to the premises described, or power failure as described under Paragraph **I.B.8**. You will exercise due diligence and dispatch to restore normal practice services.
>
> We will only pay for extra expenses that you incur within 12 consecutive months after the date of direct physical **damage** or power failure as described under Paragraph **I.B.8**.

(ECF No. 17-1, p. 32) (emphasis in original). As with practice income coverage, extra expense coverage is unequivocally contingent upon the existence of "damage" (defined as "partial or total loss to your covered property") caused by a "covered cause of loss" (defined as "ALL RISK OF DIRECT PHYSICAL LOSS excepted as excluded or limited in Section II. of this Coverage Part"). *Id.* at 46. Moreover, the extra expense coverage is available only for expenses incurred in the "period of restoration" which, itself, refers back to physical loss or damage to the property. (Period of Restoration is defined as "the period of time that: (A) begins 24 hours immediately following direct physical damage or power failure as described under Paragraph I.B.8. caused by or resulting

---

[1] The Court acknowledges that some courts have permitted claims for coverage relating to COVID-19 business interruption to proceed in similar circumstances. Some of these cases are distinguishable by their facts and, specifically, the relevant policy language. To the extent that they reach a different result, the Court respectfully believes that its interpretation and those cases it has cited represents the sounder position on this developing issue.

from any covered loss at the described premises or power failure as described in Paragraph I.B.8.; and (B) ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."). *Id* at 48.

As previously explained with reference to business income loss coverage, the Policy's plain language ties the availability of extra expense coverage to actual physical damage to Warwick's facility—and does so with numerous threads weaving together the coverage language and definitions, all of which reference physical loss or damage. Warwick's position—which is coterminous with that for business income coverage—cannot be sustained in light of the Policy's plain language.

### 3. Civil Authority Coverage

Civil authority coverage is, likewise, unavailable due to the lack of physical damage to any other property. The "Civil Authority" provision of the Policy states:

> We will pay for the actual loss of practice income and **rents** you sustain caused by action of civil authority that prohibits access to the described premises due to the direct physical **damage** to property, other than that at the described premises, caused by or resulting from any **covered cause of loss**. This coverage will apply for a period of up to 30 consecutive days from the time of that action.

(ECF No. 17-1, p. 35) (emphasis in original). This language unequivocally requires that the insured's loss stem from "direct physical damage" to third-party property. An example of where this type of coverage would apply is where access to the covered property was barred by public officials because of, for example, a fire in a neighboring structure. It requires two equal triggering events (1) action of civil authority prohibiting access to the insured's premises; and (2) that that action resulted from "direct physical damage" to a third-party property. Neither is present here.

While there is no question that the COVID-19 mitigation orders curtailed certain business operations, they did not bar physical access to any premises. Moreover, as explained above, the

boiler-plate allegations in the Amended Complaint do not specifically plead that access to Warwick's facility was forbidden and, indeed, its brief acknowledged that it could continue operations, albeit limited to emergency procedures. (ECF No. 24, p. 6). Courts interpreting civil authority coverage in insurance policies have held that reduction to partial access does not suffice to trigger business income coverage under the "Civil Authority" provisions. *See, e.g., By Dev., Inc. v. United Fire & Cas. Co.*, No. Civ. 04-5116, 2006 WL 694991, at *6 (D. S.D. Mar. 14, 2006) (holding that a civil order making access to insured's property harder, but not prohibiting access, did not trigger business-interruption coverage); *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (finding no coverage under hotel's civil authority provision because an FAA order prohibiting airplanes from flying did not prohibit all access to hotel operations); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2489711, *4 (M.D. La. Aug. 28, 2007) (finding no coverage under insured office's civil authority coverage because the direction of Baton Rouge officials to stay off streets did not deny access to business's premises). Here, the Amended Complaint does not plead deprivation of access to Warwick's premises, much less complete access.

Nor is the second triggering event present—a claim that the civil authority orders stemmed from "direct physical damage" to a third-party property. No such damage to any third-party property was alleged in the Amended Complaint. The COVID-19 mitigation orders arose in a completely different context. *Windber Hosp.*, No. 20-cv-80, 2021 WL 1061849; *1 S.A.N.T., Inc.*, 513 F. Supp. 3d 623.

Because the COVID-19 mitigation orders did not prohibit access to Warwick's premises and because Warwick's alleged losses did not stem from direct physical damage to third-party property, there is no "Civil Authority Coverage" under the Policy.

### IV. CONCLUSION

For the reasons set forth above, the Court holds that Warwick has not pleaded a cognizable claim for coverage under the Policy and, therefore, its Amended Complaint will be dismissed. Orders of Court will follow.

BY THE COURT:

_/s/ William S. Stickman IV_
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

10-15-21
Dated